IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MARISHA PETERS, | ) | |
| | ) | |
| Petitioner, | ) | No. 1:11-cv-172 |
| v. | ) | (No. 1:09-cr-98-08) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | JUDGE MATTICE |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO PETITIONER'S MOTION
FILED PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by its counsel, Steven S. Neff, Assistant United States Attorney for the Eastern District of Tennessee, hereby responds in opposition to petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

After entering a plea of guilty on February 25, 2010, before United States Magistrate Judge William B. Carter pursuant to a plea agreement, petitioner was convicted of conspiracy to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § § 846, 841(a)(1) and (b)(1)(B).[1] (R. 409 Courtroom Minutes and R. 437, Order Amending Judgment.) On June 25, 2010, petitioner was sentenced to term of imprisonment of 60 months. (R. 532, Judgment.) No direct appeal was filed.

Judgment was entered on June 28, 2010 and therefore was considered final on July 12, 2010, which was fourteen (14) days after entry of the judgment. Federal Rule of Appellate Procedure 4(b)(1)(A). *See, Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir.

---

[1]The petitioner's plea agreement allowed her to plead guilty to the lesser included offense which carried only a 5 year minimum as opposed to the 10 year minimum based on the original charges.

2004) ("an unappealed federal criminal judgment becomes final ten days after it is entered").[2]

On June 28, 2011, petitioner timely filed the within § 2255 Motion and supporting Memorandum. (R. 624, Motion and R. 625, Memorandum of Law.)

## FACTS

The underlying facts are summarized in the Revised Presentence Investigation Report ("PSR") and are set forth in the factual basis of the plea agreement filed by the United States in support of petitioner's guilty plea. (R. 411, Plea Agreement; PSR at ¶¶ 8-9).

Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and agents from outside the state of Tennessee investigated a narcotics trafficking organization from the Eastern District of Tennessee involved in the distribution of cocaine base ("crack") and cocaine hydrochloride between 2005 and 2009. (*Id.*). Petitioner knowingly, intentionally, and voluntarily joined and participated in this conspiracy. (*Id.*). Her role in the conspiracy was to obtain cocaine from her source of supply and then sell that cocaine to others. (*Id.*).

On March 18, 2008, law enforcement agents utilized a confidential informant ("CI") to make a controlled call to petitioner to discuss the purchase of cocaine. The CI and petitioner negotiated a cocaine purchase. The call was monitored and recorded. (*Id.*).

On March 26, 2008, petitioner sold 29.2 grams of cocaine hydrochloride to a CI. The controlled buy was monitored and recorded by law enforcement. (*Id.*).

---

[2]*Sanchez-Castellano* was decided when Rule 4 of the federal Rules of Appellate Procedure conferred a ten (10) day period for filing an appeal, rather than the recently amended standard which changed the period to fourteen (14) days, but the underlying rationale is the same.

2

On April 2, 2008, petitioner sold 15.1 grams of cocaine hydrochloride to a CI. The controlled buy was monitored and recorded by law enforcement. (*Id.*).

On April 3, 2008, a search warrant was issued for petitioner's residence which resulted to a seizure of 67.3 grams of cocaine hydrochloride, paraphernalia, and currency. (*Id.*).

On April 3, 2008, petitioner confessed to possession of cocaine and selling multiple ounces of cocaine hydrochloride. After being advised of her rights, petitioner stated that she had been selling cocaine in 2007 and 2008. She indicated that she had bought and sold more than 500 grams of cocaine during the time frame of the conspiracy. (*Id.*).

Petitioner was charged with numerous others in a conspiracy to distribute more than fifty (50) grams of cocaine base ("crack") and five (5) kilograms of cocaine hydrochloride ("cocaine"), in violation of 21 U.S.C. § § 846, 841(a)(1) and (b)(1)(A). (R. 3, Indictment). She faced a mandatory term of imprisonment of ten (10) years based on the original charge. Petitioner was also named in several other substantive counts in the indictment. (*Id.*).

In preparing the PSR, the probation officer determined pursuant to § 2D1.1(c)(7) that the base offense level was 26. (PSR at ¶ 14). Accordingly, after the probation officer applied a three-level downward adjustment for acceptance of responsibility, petitioner's total offense level was 23. (*Id*. at ¶¶ 20-21). Petitioner had a total of zero criminal history points, establishing a criminal history category of I. (*Id*. at ¶ 27).[3] Based on a total offense level of 23 and a criminal

---

[3] Petitioner had previously been convicted in federal court for conspiracy to distribute cocaine and possession of a firearm in furtherance of the conspiracy, but her conviction was overturned by the Sixth Circuit Court of Appeals. (PSR at ¶ 29). Petitioner also suffered a conviction for "Sell and Delivery of Crack Cocaine" in Tennessee state court in 1997 which was apparently adjudicated as a misdemeanor and did not result in application of any criminal history points. (*Id*. at ¶ 26).

history category of I, petitioner's Guidelines range was 46 to 57 months. (*Id*. at ¶ 40). This was less than the statutory minimum sentence of sixty (60) months. (*Id*.).

Prior to sentencing, petitioner filed a notice of objections to the PSR, as well as a sentencing memorandum. (R. 464, Notice of Objections and R. 499, Sentencing Memorandum). In essence, petitioner argued that regardless of the statutory mandatory minimum sentence of sixty (60) months, she qualified for the safety valve provision which would enable the Court to sentence her below that threshold. (*Id.*). The United States also submitted a sentencing memorandum arguing that petitioner had not satisfied all of the necessary requirements to qualify for the safety valve, she should be denied points for acceptance of responsibility, and she should be held responsible for a two (2) point guidelines enhancement for obstruction based on her lies to government agents and threats to co-defendants. (R. 508, Sentencing Memorandum).

At sentencing, petitioner noted through counsel that she no longer wished to pursue her objection to the non-application of the safety valve provision. (Sentencing Transcript at 5). In turn, the United States did not pursue its objections made through the sentencing memorandum that petitioner should have points added for non-acceptance of responsibility and obstruction. (*Id.*). Petitioner spoke briefly in allocution, stating, "I understand you got to sentence me to 60 months." (*Id*. At 6).

Petitioner now asserts by way of § 2255 that she received ineffective assistance of counsel ("IAC") at sentencing and alleges four (4) separate grounds of IAC to support her claim and obtain relief. Many of these arguments overlap, and the United States will address these issues together.

4

## ARGUMENT

To obtain relief pursuant to 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). She "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Moreover, a petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, she must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Second, she must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). If a petitioner fails to establish that she sustained prejudice, the Court need not decide whether

5

counsel's performance was deficient. *United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006). Petitioner has not satisfied that standard here.

Role in the Offense

Petitioner argues that counsel was deficient for failing to present mitigating proof as to her role in the conspiracy, which she argues would have resulted in the calculation of a lower advisory Guidelines range. (R. 625, Memorandum at 4-5). This argument is without merit.

After the quantities of drugs specified in the relevant statute are established, the Court must impose *at least* the applicable mandatory minimum sentence. *United States v. Hodges*, 935 F.2d 766, 772 (6th Cir. 1991), *cert. denied,* 502 U.S. 889 (1991). The Court ordinarily has no discretion in this matter. *Id.* Given the fact that petitioner did not qualify for the safety valve provision, as discussed *infra*, she was subject to the mandatory statutory minimum of sixty (60) months, and her guideline range was thus determined by the statute, not by sentencing guidelines calculations associated with quantity of drugs, criminal history, or any other factors ordinarily considered in the calculation.

Moreover, petitioner would not be entitled to relief even without the statutory minimum. A reduction for a minimal role in an overall conspiracy does not warrant a role adjustment when a larger conspiracy was not taken into account in establishing a defendant's base offense level. *United States v. Roberts*, 223 F.3d 377, 380 (6th Cir. 2000), citing *United States v. Roper*, 135 F.3d 430, 434 (6th Cir.) ("The salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable."), *cert. denied*, 524 U.S. 920 (1998); *United States v. Walton*, 908 F.2d 1289, 1303 (6th Cir.) (explaining that although the defendants were "minor participants if one compares their activities to the scope of the conspiracy as a

6

whole," they were not entitled to a minor role reduction because they were "held responsible [only] for cocaine that they were actively involved in distributing"), *cert. denied*, 498 U.S. 906 (1990) and 498 U.S. 990 (1990).

Counsel for petitioner effectively negotiated a plea to a lesser included offense with which petitioner was originally charged. The factual basis for the plea agreement petitioner signed and affirmed at her guilty plea demonstrated that she was personally responsible for the distribution of more than 500 grams of cocaine – the threshold for the statutory provision for which she pled guilty. Thus, her "lesser" role in the conspiracy had already been accounted for by her counsel in negotiating the lesser plea. The defendant's base offense level was derived from drug quantities personally attributable to her – not that of the larger conspiracy, therefore, no reduction would have been warranted. Additionally, the defendant was sentenced to the lowest possible sentence allowable by statute (60 months). A mitigating role in the offense adjustment thus could not have been applied in any event absent petitioner's eligibility for the safety valve provision. Her counsel, in effect, was able to negotiate a 60 month reduction in her sentence based on her role in the conspiracy by successfully negotiating the plea to the lesser offense. It cannot be said that petitioner's counsel was ineffective on the basis she alleges.

<u>Non-application of Safety Valve provision</u>

Petitioner argues also that she was eligible for the application of the safety valve provision. (R. 625, Memorandum at 3). She abandoned this claim at sentencing upon her discovery that arguing for her safety valve eligibility would open the very real possibility that she would lose acceptance of responsibility and have an obstruction enhancement applied based on the fact that she lied to government agents during her "debriefing." (Sentencing Transcript at 4-5).

7

Case 1:09-cr-00098 Document 638 Filed 10/20/11 Page 7 of 16 PageID #: 2126

A defendant seeking a "safety valve" reduction bears the burden of proving that she meets all of the criteria in USSG § 5C1.2. *See United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) ("Appellate courts have held that a defendant seeking to avoid a mandatory minimum sentence by resort to the safety valve has the burden of proving that he meets all of the criteria of the safety valve provisions.") (citing *United States v. Conde*, 178 F.3d 616, 620 (2d Cir. 1999) and *United States v. Hoskins*, 173 F.3d 351, 357 (6th Cir.1999)). *See also, United States v. Adu,* 82 F.3d 119, 124 (6th Cir. 1996)(same).

At issue here is the fifth safety valve criterion, which provides as follows:

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(5).

Specifically, a defendant seeking a "safety valve" reduction bears the burden of taking affirmative action to disclose to the United States all relevant information before the time of sentencing, and failure to raise the issue at sentencing waives it for appellate purposes. *See United States v. Hoskins*, 173 F.3d 351, 357 (6th Cir. 1999) ("[A]s U.S.S.G. § 5C1.2(5) makes clear, it is the burden of the defendant to provide pertinent information, no later than the time of the sentencing hearing."); *United States v. Ivester*, 75 F.3d 182, 185 (4th Cir. 1996) ("We hold, therefore, that defendants seeking to avail themselves of downward departures under § 3553(f) bear the burden of affirmatively acting, no later than sentencing, to ensure that the Government is truthfully provided with all information and evidence the defendants have concerning the relevant crimes.").

8

Of the safety valve provisions, this one is the most often litigated, *United States v. Sabir*, 117 F.3d 750, 751 (3d Cir. 1997), and as a result the courts have extensively addressed the burdens and requirements it establishes. First, it is abundantly clear that a defendant has the affirmative obligation to come forward and provide the government with all the information that is required, and the government has no obligation to even solicit the information. *See, e.g., United States v. Flannagan*, 80 F.3d 143, 146-47 (5th Cir. 1996). Similarly, simply answering questions in a debriefing session is not enough. As part of a defendant's affirmative obligation he or she must make sure that all of his relevant information is passed to the government. As the Sixth Circuit has explained, "[t]he defendant's statement that he gave the government 'all they asked,' if true, does not satisfy his burden of proof under § 3553(f)(5) and § 5C1.2(5)." These provisions clearly require an affirmative act by the defendant truthfully disclosing all the information he or she possesses that concerns the offense or related offenses. *Adu*, 82 F.3d at 124. The fact that the defendant's information, is, or has become, for whatever reason, useless to the government is also of no consequence and is no defense to a defendant's failure to "come clean." As the Fifth Circuit noted in reversing a district court's grant of safety valve credit, the applicable safety valve provision explained that if the information is not useful to the Government or if the Government is already aware of the information, the court is not precluded from finding that the defendant has sufficiently complied with subsection five, thus illustrating the focus of subsection five is on the defendant's providing information rather than the Government's need for the information. *Flannagan*, 80 F.3d at 146. *See also United States v. Myers*, 106 F.3d 936, 941 (10th Cir.) ("section five requires disclosure 'whether or not it is relevant or useful to the government investigation'"), *cert. denied*, 520 U.S. 1270 (1997).

9

As the statutory language suggests, the scope of the information which a defendant is required to disclose is "extremely broad: it requires disclosure of 'all information' regarding 'the offense of conviction and all relevant conduct.'" *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997). *See also, e.g.*, *Myers*, 106 F.3d at 941 (noting that the disclosure requirements of section five are "very broad"). This Court has explained that "[t]he purpose of the statute is to allow less culpable defendants in drug related crimes who fully assist the government to avoid the application of the mandatory minimum sentence." *See United States v. Pratt*, 87 F.3d 811, 812-13 (6th Cir. 1996). Thus, the safety valve "was intended to benefit defendants who wished to cooperate with the government (and in fact did everything they could to cooperate) but simply had no new or useful information to provide." *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996), quoted in *United States v. Cruz*, 156 F.3d 366, 375 (2d Cir. 1998).

The First Circuit has addressed this issue with the following discussion:

> In enacting the safety valve provision, we think Congress was aiming its leniency at low-level defendants who did their best to *cooperate* to the extent of making full disclosure . . . . Courts have thus far found it fairly easy to cull serious efforts at full disclosure from mere pretense. . . . Defendants often have reasons, such as loyalty to a confederate or fear of retribution, for not wanting to make full disclosure. But full disclosure is the price that Congress has attached to relief under the statute, and the burden remains on the defendant to prove his entitlement. Defendants will discover soon enough that there is little mileage in gambits designed to qualify the defendant for relief while avoiding full disclosure.

*United States v. Montanez*, 82 F.3d 520, 522-23 (1st Cir. 1996) ( italics in original, citations omitted). As the First and Seventh Circuits have warned, the Defendant has the burden of establishing full disclosure and "defendants who make partial disclosure as an opening bid are engaging in a risky gamble." *Montanez*, 82 F.3d at 523; *see also Marin*, 144 F.3d at 1094.

10

Case 1:09-cr-00098 Document 638 Filed 10/20/11 Page 10 of 16 PageID #: 2129

Because the statutory and Guidelines provisions are designed to address those defendants who are "presumably" less culpable, full disclosure by a defendant as to his or her conduct is essential for the Court to make a determination consistent with culpability. *See, e.g., United States v. Acosta-Olivas*, 71 F.3d 375, 379 (10th Cir. 1995) ("§ 3553(f), as repeated in guideline § 5C1.2, was clearly intended to permit courts to sentence relatively less culpable offenders to sentences below an otherwise applicable mandatory statutory minimum sentence. Besides requiring that a defendant seeking to avail himself of this safety valve meet certain objective criteria, the section also requires that a defendant truthfully tell all he knows to the government, regardless of whether this information is useful to the government. Presumably, this requirement assists courts in determining whether a defendant truly is relatively less culpable. We therefore hold that the district court erred in interpreting § 3553(f)(5) to require a defendant to reveal only information regarding his own involvement in the crime, not information he has relating to other participants.")

Finally, the Court makes the ultimate decision on whether a defendant deserves a "safety valve" reduction. See *Maduka*, 104 F.3d at 895 ("[A] court evaluating a § 5K1.1 motion must grant 'substantial weight' to the evaluation by the government of the assistance rendered by a defendant, whereas a court independently reviews the applicability of § 5C1.2.") (citing *Ivester*, 75 F.3d at 185).

By denying that she had any information regarding her relevant conduct, including identifying other sources of supply, quantities of cocaine she dealt, and customers of her own, petitioner disqualified herself from eligibility under the safety valve. As discussed, *supra*, to obtain credit under the safety valve, a defendant must disclose information beyond that related to

11

the offense of conviction. *See, e.g., United States v. Miller*, 151 F.3d 957, 959 (9th Cir. 1998) ("If Congress had intended to limit disclosures to the offense of conviction, it could easily have said so."), cert. denied, 119 S. Ct. 915 (1999). Petitioner failed to carry her burden of establishing eligibility under the safety valve provision. Moreover, she affirmatively lied about her interaction with the agents who executed the search warrant at her residence and interviewed her. The statement she gave to Agent Allman at the time of the search warrant was far more detailed and extensive than the one she gave during her 'safety valve proffer' with the United States. Her counsel recognized that these facts might have impacted her ability to receive points off for acceptance of responsibility and indeed may have resulted in application of additional points for obstruction. Such a result would likely have carried petitioner to a guideline range higher than the minimum prescribed by statute. Thus, he was not deficient in failing to pursue petitioner's mitigation *via* safety valve.

Sentence "entrapment" or "manipulation"

Petitioner also argues that she was improperly sentenced based upon "sentencing entrapment." (R. 625, Memorandum at 5.) Petitioner claims that she was subjected to an enhanced guidelines sentence as a result of government conduct, which she avers constituted "manipulation" of her sentence (*Id*.)

Insofar as petitioner is raising an objection that could have been raised while the case was before the Court or on direct appeal, she has procedurally defaulted this claim. A petitioner who has procedurally defaulted a claim and raises it for the first time on collateral review must demonstrate "cause" for the default and, if cause is shown, must then prove "actual prejudice"

12

resulting from the error, or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Peveler v. United States*, 269 F.3d 693 (6th Cir. 2001).

However, it appears that petitioner also is alleging that counsel was constitutionally deficient for failing to make this argument, thus it may be considered as an alleged Sixth Amendment claim that was not defaulted.

In any event, this claim provides no basis for relief. First, petitioner misunderstands the fact that application of mandatory statutory minimum sentences supersedes the sentencing guidelines. *See, Hodges*, 935 F.2d at 772. Petitioner agreed with the government's factual basis that she was personally responsible for the distribution of more than 500 grams of cocaine and noted herself that the Court was constrained to sentence her to sixty (60) months by statute. (Sentencing Transcript at 6). Nothing about the controlled buys the government made in the case would have been unusual in terms of quantity in light of her admissions and hardly constitutes "manipulation" or "entrapment." Petitioner claims that her counsel failed to obtain adequate discovery or engage in a sufficient investigation to determine her role in the conspiracy and quantities that might be attributable to her. She fails to mention that her counsel was provided in discovery, among other things, a statement made by petitioner to law enforcement during the investigation of the case wherein she stated she had been going wild selling cocaine and admitted to distributing more than two (2) kilograms – an amount far in excess of what she admitted to in her plea agreement. Indeed, counsel also knew from discovery that the United States would be able to attribute to petitioner more than one hundred (100) grams of cocaine "on

13

the table" alone based on the controlled buys and execution of the search warrant[4] alone in just a two (2) week time span during the Spring of 2008. This claim of the petitioner is specious, and counsel was not deficient in failing to raise this as an issue.

### Credibility of Witnesses

Petitioner complains, in a cursory and conclusory fashion, that her counsel was deficient for not adequately challenging the credibility of witnesses against her. (R. 625, Memorandum at 7). This contention is wholly without merit.

As the factual basis for her plea suggests, much of the proof against petitioner consisted of a series of monitored and controlled drug buys by law enforcement directly from her. (R. 411, Plea Agreement; PSR at ¶¶ 8-9). Thus, she was on tape multiple times selling anywhere between half an ounce to a full ounce of cocaine to a CI. Additionally, law enforcement agents executed a search warrant at her residence where they found an additional two (2)-plus ounces of cocaine. (*Id.*). Finally, petitioner confessed to being involved in a conspiracy to distribute cocaine and attributed more than 500 grams to herself. (*Id.*). Other "witnesses" who made statements against her as part of their agreement to cooperate were not needed or even referenced in her plea agreement to enhance her sentence. Petitioner fails to outline specifics about what her lawyer could have done differently, but it can hardly be stated that her counsel was deficient for negotiating the plea deal he did in light of the formidable evidence against her.

---

[4]It can hardly be claimed that the government artificially "manipulated" the amount of drugs already located at petitioner's residence which the government had *not* ordered *via* the CI.

14

<u>Appellate waiver</u>

Petitioner's final complaint is also devoid of substance. She cursorily alleges that she did not enter into the plea agreement in a knowing and voluntary fashion, and the issue of "collateral attack" was not explained to her. (R. 625, Memorandum at 8-9). She provides no other details.

Nevertheless, petitioner was advised by the Court at her change of plea about the nature of the rights that she was relinquishing by virtue of her plea. She was also asked if anyone had forced her into the plea, whether she was entering into the plea voluntarily, and whether she was actually guilty of the offense charged. Petitioner affirmed that she wished to voluntarily enter the guilty plea and admitted her guilt. Her after-the-fact conclusory claims cannot be trusted or taken seriously.

## CONCLUSION

For the foregoing reasons, petitioner's § 2255 motion should be denied.

Respectfully submitted,

William C. Killian
United States Attorney

By: *s/ Steven S. Neff*
Steven S. Neff
Assistant United States Attorney
1110 Market Street, Ste 301
Chattanooga, TN 37402
(423) 752-5140

CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2011, a copy of the foregoing Response was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. A copy of the foregoing response was served on petitioner via United States Mail, postage prepaid, addressed as follows:

> Marisha Peters, Reg. No.12946-074
> FPC Alderson
> Federal Prison Camp
> Glen Ray Rd, Box A
> Alderson, WV 24910

By: *s/ Steven S. Neff*
Steven S. Neff
Assistant United States Attorney